Our next case is University of Strathclyde v. Clear-Vu Lighting, LLC, case number 20-2243. Mr. Bradley, are you ready to proceed? This is Mr. Kelly, Your Honor. Mr. Kelly. Okay. Mr. Kelly, you may proceed, sir. Good morning, Your Honors, and may it please the Court. The claims in this case are directed to inactivating certain bacteria using specific wavelengths of light, and doing so without using a photosensitizer. And yet, the Board invalidated those claims by combining two references that always use the photosensitizer to inactivate bacteria. And in fact, one of the- Mr. Kelly. Yes. Mr. Kelly, this is Judge Stoll. I just want to jump in and ask you a question. I'm trying to make sure I understand what the Board found here with respect to what the product teaches. I think Ashkenazi- sorry, Ashkenazi teaches exposing bacteria to light without ALA. And so, I think what the Board said is that a person of ordinary skill and the art would have been motivated to expose the bacteria, Nissen, to light without ALA. And that because of that, this would result in the claimed invention. I guess the idea that you would use Nissen without ALA and somehow presume that there would be inactivation of the MRSA. Do I understand that to be- whether it's right or wrong, I just want to first make sure I understand what your understanding is of the Board's holding here on how these two prior references combined to somehow teach these claim limitations. Sure. So, it's slightly more nuanced than that, Judge Stoll. So, in Ashkenazi, you're correct that in some cases they used the photosynthesizer ALA. But it's also the case that they always used another photosynthesizer, Riboslaven. So, there's no- and there's no dispute about that. The Board recognized that in its decision. So, in Ashkenazi, in every single example, a photosynthesizer was used. Yes, I understand that. Okay. And then when they take that method and they apply it to the bacteria in Nissen, which is MRSA, they did so in a way that eliminated all of the photosynthesizers from the method. So, they started with- Because Nissen doesn't have Riboslaven, right? So, they say because Ashkenazi was able to remove the ALA and it still had Riboslaven, one of ordinary scaly art would think somehow you could remove the ALA from Nissen and somehow achieve the inactivation recorded by the claim, right? That's right. And the fundamental problem with the Board's decision is that they removed all of the photosynthesizers from the method and they assumed it would work. And then they pointed back to the results in Ashkenazi as evidence of that, even though all of those results were generated using a photosynthesizer. So, in effect, they used the method for one reference, applied it to the MRSA bacteria in the second reference, and then in invalidating the claims, they did so in a way that eliminated all of the photosynthesizers from Ashkenazi's method, but they still relied on Ashkenazi's reported results, even though those results were only achieved using a photosynthesizer. They had no evidence and certainly not substantial evidence to support that finding. And neither of the references the Board relied on were able to inactivate any bacteria without using a photosynthesizer. So there's no evidence anywhere in the record of the bacteria in the claims ever being inactivated without using a photosynthesizer. And if you look at the case from the perspective of a person of ordinary skill, the two references actually would reinforce that a photosynthesizer is needed for inactivation. So you've got the first reference, Ashkenazi, where... Can we go back to where we were with Ashkenazi? Judge Clement, you're breaking up really bad. Can you hear me now? A little bit better. Yes, sir. Yeah. The parties agreed that MRSA is a gram-positive bacteria that naturally produces the porphyrins, and from there... We can't hear you, Judge Clemenger. ...released radicals. Do you agree that the porphyrins released the radicals when exposed to light in MSRA, MRSA, MRSA? Yes. So you broke up a little bit, Judge Clemenger, but if I understand your question correctly, it's, is, would there have been porphyrins present in MRSA, and would they have released the radicals? And the answer to that question... Yes. The answer to that question is yes, and in fact, Nitsin shows that MRSA exposed to light without using a photosynthesizer does not respond at all. So there's no dispute that the MRSA bacteria tested in Nitsin would have had those porphyrins in it, and they probably would have released some radicals. The parties agree on that. But Nitsin himself confirmed that it's not simply a matter of having some amount of porphyrins present in the bacteria, because that bacteria showed no response when they tested it. And again... If you can hear me, Judge, I'm looking at page 40, the sentence in the middle of that page, and what you seem to be saying is that that is central to the board's reasoning. There's no substantial evidence to support the statement. I'm sorry. Which part of the record are you referring to? I couldn't quite hear. Page 40. It's right in the middle of the page. The sentence starts, ... ... ... ... Judge Klobuchar, can you try again? Because it's hard to hear you. Okay. Maybe you can see what I'm talking about at page A40. I can hear you now. Go ahead. Yeah, and it seems to me that that's the crux of the case. If that is a correct statement of fact, then maybe there's something to the board's decision. So, Judge Klobuchar, the statement the board makes that the porphyrins, when illuminated with light, damage or kill the bacteria is demonstrably false. Because in Nixon, you've got those porphyrins in the bacteria, and they exposed it to light, and nothing happened. What I'm trying to get at, sir, is the fact that you say that that is incorrect, doesn't that undermine the board's entire rationale? It does, Your Honor, because they're using that in combination with... ... They're saying if there's a little bit of inactivation, then you simply expose it to more light for longer periods of time, and hosanna, you have the result. So, it seemed to me that if that fact-finding is incorrect, the board is wrong. Right, and it's incorrect to the extent that it's not simply a matter of having some porphyrins in the bacteria, and then knowing that those will lead to inactivation, because Nixon shows us that it's not that simple. And this is sort of... It's confounding a little bit, because in the board's anticipation analysis, Clearview argued that Nixon anticipated the claims, and the board found that Nixon showed no inactivation. So, you've got a finding from the board, but there's no inactivation. Go ahead, you can finish your sentence, and then I want to ask you a question. Sure, I just want to make the point that the board makes a finding that Nixon shows no inactivation, and then they hypothesize that the presence of some porphyrins in MRSA necessarily means it will be inactivated by light. But in Nixon, you had no inactivation at all. I just want to ask you one thing, which is, my understanding is that Nixon does meet the claim limitations, including how the visible light is applied at wavelengths in the range of 400 to 420. But what's missing there, and very clearly missing, is the inactivation, because Nixon expressly says that there was no inactivation, right? That's exactly right, girl. And do you have expert testimony? My understanding is that you have some expert testimony as well, that supports this understanding. I think it's at page A2132, and it supports this reading and understanding of the prior... That's correct, Your Honor. I'll find that part of the record. That's all right. I'll probably ask your opposing counsel about that. I would note another statement, Your Honor, on the very next page, A2133, where our expert concludes, looking at data from an earlier Nixon study, too, which shows that MRSA doesn't respond as the light dose increases. And he says, to a person of ordinary skill, the data in the reference would have indicated that the response of MRSA without ALA to blue light, even at the higher doses in Ashkenazi, would have been the same. No bacteria would have been killed. So there's clear testimony from our expert on that point. And I think when you look back at the two references, and you look at it from the perspective of a person of ordinary skill, they would have seen these two references, they would have seen that both references always used a photosensitizer to inactivate bacteria, they would have seen that the MRSA exposed to light in Nixon without using a photosensitizer showed no response, and there was no single example in any of the references of the bacteria being inactivated without using a photosensitizer. And so at the time of the invention, this would have only reinforced that a photosensitizer was needed, which is the opposite of what the claims require. And Clearview did not cite any evidence in their briefs to the board of MRSA ever being inactivated without using a photosensitizer. They didn't cite any evidence in their briefs to this court, and they will not today point you to any evidence of MRSA ever being inactivated without using a photosensitizer. And there was simply no evidence, and certainly not substantial evidence, for the board to rely on to support its findings. If there are no further questions, I'll reserve the rest of my time for rebuttal. Okay, thank you. Mr. Patel? This is Mr. Emfinger. Okay. You may proceed. Thank you, and may it please the court. Brian Emfinger with Banner & Whitcoff on behalf of Clearview Lighting. One of the issues on appeal here is reasonable expectation of success, so that's where I'd like to begin. Substantial evidence supports the board's correct conclusion that one of ordinary skill would have reasonably expected success in combining Ashkenazi and Nissan's teachings to inactivate MRSA in the absence of a photosensitizer using a sufficient dose of blue light. And three fully supported and undisputable facts support this conclusion. First, MRSA naturally produces porphyrins on its own without any external assistance. Second, those porphyrins release oxygen radicals when exposed to blue light. And third, the released oxygen radicals cause damage to the bacteria cell membrane, which can lead to cell death. Counsel, this is Judge Stoll. I have a quick question for you. I was looking at the testimony of Dr. Goodrich at pages A21, 32 through 33, which includes testimony about how APOSA, looking at Nissan's 1999 data, would clearly have expected the curbed, the early absent bacteria data to remain flat as the dosage increased to 75. Do you have any expert testimony rebutting that? I'm not sure there's specific expert testimony to rebut that, Your Honor, but I will point out the board determined that any conclusions to be drawn from those results should be limited, and the limited data from those trials did not outweigh the other evidence that was presented. What evidence did the board rely on for that fact finding? Of a reasonable expectation of success? Yeah, you said that the board said that that data should be limited, notwithstanding expert testimony that's unrebutted and saying otherwise. I want to know what evidence the board relied on for that fact finding you're referring to. Yes, Your Honor. So, I can point you to... Give me one moment here. Which fact finding are we looking at, just for clarity? So, I think Judge Stoll is referring to the fact finding of Dr. Goodrich's testimony that if you increase the dose of light in the Nitsan-99 trial, that the line would remain flat. But I'll point you to the board's remarks on page 44 of the appendix where they note that Dr. Goodrich states the response of MRSA without ALA to the blue light at the higher light dose would have been the same at the 50 joules per square centimeter light dose, that no bacteria would have been killed. But they note that Dr. Goodrich failed to provide any underlying facts that formed the basis for that opinion and determined that it's entitled to little or no weight. So, in other words, that's a legal conclusion that his testimony can be disregarded. Is that how you would characterize that? Yes, Your Honor. But getting back to my main point about the fully supported evidence... And I'm correct though, can I interrupt you for a minute, that factually there's nothing rebutting what he's saying here? You have no expert testimony rebutting Dr. Goodrich's testimony here, right? No expert testimony, but I will point out if you look at the Nissan 1999 reference, they used the same relatively low dose of light that was used in Nissan. But the argument that relies on this Nissan 1999 study points out... Excuse me. Ignores the fact that Nissan explicitly lists its conclusion that... Excuse me, let me back up. I think one of the things that we would want to point out about the Nissan 1999 study is that the relevance of the results should be limited in this case because they actually used a broader wavelength range than what was used in the Nissan study. In Nissan 1999, they used a wavelength range of 400 to 450 nanometers instead of the more narrow 407 to 420 nanometers that was used in Nissan. Okay, can I ask you about something else? In your red brief, in talking about what a poser would have understood that the proposed combination of Nissan in view of Ashkenazi would teach inactivation of bacteria even without ALA or any other photosensitizer, you have a statement in your brief that says, it defies logic to conclude that inactivating MRSA by applying Ashkenazi's technique to Nissan's MRSA would not result in inactivating MRSA when the patentee obtained the very result using the same technique. How is that not hindsight? How can you point to the patent and what the patentee did as supporting an obvious combination? That seems quintessential hindsight to me. Can you explain to me why I'm wrong? Sure, so I'll note that the board didn't rely on the patent itself for evidence of obviousness. I'm asking about your brief. This is a statement in your brief. Right, so we're not relying on anything from the patent to fill any gaps in the prior art. Why did you put this in your brief? We put it in the brief because the patent is really just confirming what the natural phenomenon or the natural result would be. Is it proper for me to rely on what the patent says in my obviousness analysis? I think if the patent makes certain admissions about the state of the art or what would be expected. So you don't think this is hindsight? Do you think this is hindsight in your brief? No, absolutely not. Why not? Do you think it's perfectly proper for me to rely on this? Do you think it's perfectly proper for me to rely on this? Even though there's two references from Nixon that would suggest where they tried to light activate MRSA without a photosensitizer and failed. I wouldn't characterize it as a complete failure in NISAN. The reason was because as the board correctly recognized the purpose of that non-ALA trial was to determine whether external outside of the bacterial cells contributed to the photo inactivation. The board also correctly recognized that any conclusions from this one trial should be limited because NISAN did not expose the MRSA to more than a single dose of light for any higher light doses and did not investigate the effect of incubation time on inactivation. The board cited to Ospinozzi's teachings that these factors when increased can increase the level of inactivation. Mr. Hemfinger, can you hear me? Yes, I can hear you. You started your argument by saying that MRSA releases oxygen molecules that result in inactivation when subjected to light. And you're channeling what the board said at page A40 that we discussed with your adversary. And I'm just asking you where is there evidence in the record that MRSA, that the oxygen that releases will inactivate if not enhanced with a photosensitizer? Sure. So the evidence that MRSA would be inactivated can be found first in Ospinozzi's teaching that bacterial cells that produce porphyrins may be inactivated by their internal porphyrins when exposed to a sufficient dose of blue light. And then in conjunction with... Stop right there. May or may not. So it doesn't say they always... Excuse me. It doesn't say they always do. So I saw that what other reference than that in the record supports the notion that MRSA unaided that it naturally will inactivate after showing light? So in addition to Ospinozzi's teaching there's the undisputed knowledge that MRSA produces and accumulates porphyrins. And I think it's also important to appreciate... You're not answering my question. We know that. That's admitted. What we don't know is what naturally occurring MRSA does when exposed to light. You say it results in inactivation. I'm simply asking you to show me somebody who agrees with you on that point. So I think our argument, Your Honor, is that there would have been a reasonable expectation of success. I'm not asking you that question. I'm asking... Are you admitting that there's no evidence in the record that shows for sure that there is inactivation when you expose natural MRSA to light? So we don't dispute that the references do not individually disclose the inactivation of MRSA in the absence of a photosensitizer. But I think that argument fails to appreciate that a conclusion of... You're agreeing that there's nothing in the record that shows that exposing natural MRSA to light leads to inactivation, right? Correct. We do not dispute that the references do not individually disclose successful inactivation of MRSA in the absence of a photosensitizer. So your argument has to be that since we know that if you fiddle around with the length of time at which MRSA might be exposed or you fiddle around with the amount of light, you might be able to wake up the oxygen radicals to do the work, right? That's correct, Your Honor. And I'll point out that the way... So you're saying the fact that additional multiplication of exposures or longer exposures in time has worked on some bacteria to wildly increase inactivation, we should expect that same thing to happen with MRSA? That's correct, Your Honor. Simply because it has a low level of porphyrins and therefore a low level of oxygen that could produce the radicals? Correct, Your Honor, especially given the fact that the Board correctly recognized that the amount of porphyrins in the bacteria is not important in the context of these claims. And that's because the claims don't require any amount of porphyrins and the specification provides no teaching that some minimum amount of porphyrins are necessary to achieve inactivation. In fact, the specification doesn't even acknowledge porphyrins or their role in the inactivation process. So that's what you were saying in your brief, in essence. It's just a matter of common sense that if you have a bacteria that has a porphyrin in it... There was a question pending when we paused. No, it's Judge Clevenger. We had just finished the discussion and I'd ask you whether, in essence, you're not just saying that it's a matter of common sense that MRSA, if exposed to light, would have some inactivation, and you agreed. Correct, Your Honor. And I think with my remaining time, I'd like to point out that what this appeal really boils down to is what was the reasonably expected result of exposing MRSA to blue light in the absence of a photosensitizer using parameters that were known to have an impact on the level of inactivation and knowing that MRSA produces porphyrins. One particular point I want to make is just it's important to appreciate how low the bar is here for an expectation of success. The Board properly recognized that expectation of success must be framed in the context of the patent's definition of inactivation. It defines inactivation to mean that bacteria are killed or damaged so as to reduce or inhibit its replication. And that result is much more modest than what the prior researchers were looking into. In Ashkenazi and Nitsan, the researchers were concerned with the eradication of their respective bacteria, in other words, the total destruction of the bacteria. But here, the claims do not require total eradication and the patent's definition of inactivation is satisfied by much more modest results which frame the expectation that needs to be shown for obviousness. And so I think on the basis of this evidence, the Board correctly found that one of ordinary skill would have had a reasonable expectation of success in meeting all claim limitations. And I would direct your attention to page 39 of the appendix where the Board does a pretty good job of explaining why inactivation of MRSA in the absence of a photosensitizer would have been the expected result. So we would ask the Court to affirm the Board's conclusion that the challenge claims are obvious. So if there are no more questions, I thank you, Your Honor, for your time. Thank you, Mr. Emfinger. Mr. Kelly? Thank you, Your Honor. I'd start just by saying that Nitsan shows the opposite of what Clearview's counsel is suggesting to you. So the notion that the presence of some porphyrin is necessarily sufficient to cause inactivation is- I mean, there was no evidence of the bacteria that Nitsan tested and when they didn't use the photosensitizer, there was no response whatsoever. And Judge Clevenger, you asked the question about, was there any evidence of the bacteria waking up at some type of dosage? And the answer to that question is no. In Ashkenazi and in the Nitsan 99 paper, every single example, the bacteria responded to light at some dose and to suddenly waking up at a higher dose. There's not a single example of that, not for MRSA and not for any other bacteria anywhere in the record. And you can actually see that, Judge Stoll, in the diagram that you pointed out at APPX 2133. The bottom lines there show what happens when MRSA has more porphyrins in it because they've been induced using a photosensitizer. And you'll see there, even at the lowest tested light dose, 10 joules per centimeter squared, you get some degree of inactivation. So the references to a person of ordinary skill would have only reinforced that you need porphyrins for inactivation and for a bacteria like MRSA, you need a photosensitizer to generate those porphyrins. That's the clear taking that a person of ordinary skill would have gotten from the references at the time of the invention. Nissen shows the opposite of what Clearview is arguing. And again, they didn't cite any evidence in their briefs to you and they didn't point you to any evidence today of MRSA ever being inactivated without using a photosensitizer. And without that evidence, the board's decision has to be reversed. I'm happy to entertain any questions if there are. Okay. We thank you, Mr. Kelly, for your argument. We thank all parties for their arguments this morning. That concludes this morning's oral arguments. This court now stands in recess. The honorable court is adjourned until tomorrow morning at 10 a.m.